**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LANCE MACK,

      Plaintiff,

-against-

DELTA AIR LINES, INC; DELTA AIR LINE GLOBAL SERVICES D/B/A DELTA GLOBAL SERVICES; ARGENBRIGHT HOLDINGS LLC d/b/a ERMC AVIATION SERVICES d/b/a UNIFI; ALLSOURCE PPS, INC.; AGILE ONE; BARRY COLBURN; and JOHN O'DWYER; in their individual capacities and as aiders and abettors

      Defendants.

**Case No:**
**21-CV-0519(BMC)**

**SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF MOTION TO WITHDRAW AS ATTORNEY OF RECORD**

Pursuant to U.S.C. § 1746, I hereby declare as follows:

1. I am the attorney of record in the above-captioned matter for Plaintiff, Lance Mack ("Plaintiff" or "Mr. Mack"), and as such, I am fully familiar with the facts and circumstances of this matter as set forth herein.

2. Pursuant to Local Civil Rule 1.4 and this Court's Order, I submit this supplemental affirmation in support of Movant's (Special Hagan, Esq.) motion to withdraw as counsel for Mr. Mack in this action. (ECF. Dkt. 40)

3. Based on representations made by Plaintiff, Counsel purchased an index number and filed the Complaint that initiated this action on February 1, 2021. (ECF. Dkt. 1)

4. On February 18, 2021, Plaintiff entered into a retainer agreement with Mr. Mack.

5. Since the facts surrounding Plaintiff's employment and his claims were not clear, Counsel amended Plaintiff's complaint on March 10, 2021. (ECF. Dkt. 7 and 8)

6. Between March 24 and 25, 2021, Movant served Defendants with Summonses and Complaints in New York City, Atlanta and California.

7. Therefore, since entering into the retainer agreement with Mr. Mack, Movant has acted with the diligence required of attorneys in representing Clients in this District.

8. However, in recent weeks, grounds to withdraw have arisen under the New York Rule of Professional Conduct 1.16(c )(7).

9. Mr. Mack has not complied with the retainer agreement and has not completed the agreed to scheduled payments as of May 1, 2021.

10. A full discussion with Mr. Mack and his colleagues led Movant to determine that the best way to maximize the outcome of all involved was to address the group's wage and hour claims.

11. Consistent with that premise, Movant has had over 20 hours of telephonic and ZOOM conferences with Plaintiff and his colleagues.  Movant engaged in these communications, based on the multiple representations made by Plaintiff and his colleagues that they would sign and enter into retainer agreements with Movant.

12. Upon attempting to memorialize the attorney client relationship with two of Mr. Mack's co-workers, a breakdown in communication and cooperation ensued.

13. Mr. Mack and his colleagues ignored Movant's requests despite Movant's repeated communications that the Court had mandated that Movant either amend plaintiff's complaint or proceed with briefing Defendants' Motion to Dismiss.

14. At the time, Movant continued to experience health issues from COVID and sought to minimize verbal communication due to her respiratory issues.  Mr. Mack was privy to these issues, but still insisted on ignoring written communications.

15. Mr. Mack and his colleagues refused to respond to emails unless Movant threatened withdrawal.

16. Initially, one of Mr. Mack's witnesses refused to engage in any further communication with Movant. Specifically, Witness 1 stated that he no longer wished to communicate with Movant.

17. Witness 1 sent this hostile email, after several of Movant's requests: to memorialize the agreement; and to finalize the facts of the complaint were ignored.

18. Witness 1 is fairly integral to Mr. Mack's claims. He witnessed a number of incidents between Mr. Mack and Mr. O'Dwyer. He also provided a statement in support of Mr. Mack's claims.

19. Movant then re-convened via ZOOM with Mr. Mack, Witnesses 2 and 3. At that time, Mr. Mack became noticeably hostile towards Movant.

20. It was clear that the relationship had continued to deteriorate, however at that time Mr. Mack made a partial payment towards the retainer in an attempt to strong arm Movant into representing the remaining Witnesses without further remuneration.

21. To be clear, Movant repeatedly conveyed to Mr. Mack and his colleagues that she was in no position to work without monetary compensation.

22. When Movant asked about the remaining payment via text, Mr. Mack ignored the query.

23. When it became obvious that the attorney client relationship with Mr. Mack was no longer practicable, Movant told Mr. Mack that she was willing to forgo the remaining payment. Movant also conveyed to Mr. Mack that he needed to obtain new counsel.

24. In a last ditch effort to salvage the relationship, Movant agreed to represent two of the additional witnesses if Mr. Mack was willing to renegotiate his retainer.

25. In an effort to salvage the relationship and to comply with the Court's order, Movant then spent another 10 hours with Witnesses 2 and 3 on ZOOM.

26. Mr. Mack then intentionally mislead Movant via text, and told her that Witness 2 would retain her and would pay a fee.

27. Based on these representations, Movant contacted Witness 2, who flat out denied any such agreement. In fact, at that point Witness 2 engaged in a baseless ad hominem attack against Movant and stated that he no longer wished to communicate with Movant.

28. Despite having read the Amended Complaint before the parties' first, second and third ZOOM conferences. Witness 2 stated that he would not participate in the group action because his friend was named in the complaint. He also stated that there were errors and lies in the complaint, and insinuated that they were there due to Movant's ineptitude. Witness 2 also stated that he no longer wished to communicate with Movant.

29. Witness 2 made spurious accusations against Movant in his correspondence, which further contributed to the breakdown in communication.

30. Witness 2's cooperation is even more integral to Mr. Mack's claims, since he seems to be the only person who possesses full knowledge of the regulatory provisions that pertained to their respective positions at Delta.

31. Witness 2 is also integral to the wage and hour claims in this case, since it appears that he kept complete records of the overtime he worked and his pay stubs.

32. Witness 2 also witnessed most of Defendants' acts of discrimination towards Plaintiff and he also served as a witness for Mr. Mack in his internal discrimination complaint.

33. Movant made multiple verbal and written inquiries about the AOSSP manual and governing federal registers that pertained to the position relevant in this matter.

34. Mr. Mack was unable and or unwilling to confirm or deny his possession of the documents.  When Movant found them on the internet neither he nor his colleagues would confirm/cooperate and disclose whether they used the documents to perform their job functions. This was despite the fact that Movant made multiple verbal and written inquiries.

35. The performance of Mr. Mack and his colleagues is material to the matter at hand.  Along with Mr. Mack, the three Witnesses were each let go by Defendants for various reasons. Plaintiff contends their separations were rooted in discriminatory and retaliatory animus. While Movant anticipates that Defendants will cite alleged performance issues as the legitimate business justification for their actions.

36. Accordingly, Movant respectfully requests that the Court relieve her of her position as counsel.  Based on any of the following:

    - Mr. Mack's unwillingness to communicate and cooperate in the confirmation of documents.
    - Mr. Mack's failure to complete payment as per the installment schedule in the retainer agreement;
    - Mr. Mack's unwillingness to communicate via email unless he deems fit;
    - The disrespectful, manipulative and deceptive posture of Mr. Mack and his colleagues, along with their unwillingness to communicate and cooperate with the prosecution of this matter; and
    - The early status of the matter at hand, the parties are only at the pleadings stage where prejudice would be minimal.

37. As per the Court's order, on May 31, 2021, Mr. Mack was sent a copy of the Court's order via email. (ECF. Dkt. 40)

Date:       June 5, 2021


\_\_/s/_____
Special Hagan, Esq.

**CERTIFICATE OF SERVICE**

     I certify that on June 5, 2021, I served a copy of this Supplemental Affirmation in Support of Movant's Motion to Withdraw as Counsel on Plaintiff, as per the Court's Orders (ECF. Dkt. 39 and 40) via email. And by close of business today, I will also serve Plaintiff via UPS next-day delivery to the address listed on the docket sheet, 17 Woodbine Street, Coram, New York 11727.


Date:   June 5, 2021


__/s/_____

Special Hagan, Esq.